E6OPKONP

1   UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x
3
    UNITED STATES OF AMERICA
4
              v.                        10 Cr. 228 (LTS)
5
    PAUL KONIGSBERG,
6
                    Defendant.
7
    ------------------------------x
8                                       New York, N.Y.
                                        June 23, 2014
9                                       11:08 a.m.

10  Before:

11          HON. LAURA TAYLOR SWAIN

12                                      District Judge

13

14          APPEARANCES

15

    PREET BHARARA
16       United States Attorney for the
         Southern District of New York
17  MATTHEW L. SCHWARTZ
    JOHN T. ZACH
18       Assistant United States Attorneys

19

    REED M. BRODSKY
20  CHRISTINE DEMANA
         Attorneys for Defendant
21
    ALSO PRESENT:  FBI AGENT PAUL ROBERTS
22                 FBI AGENT PATRICK DUFFY

23

24

25

E6OPKONP

1          (In open court)

2          (Case called)

3          THE COURT:  Good morning.  Would everyone other than

4    counsel please be seated.  Thank you.  May I now have

5    appearances, starting with the government?

6          MR. SCHWARTZ:  Good morning, your Honor.  Matthew

7    Schwartz and John Zach for the government, and we're joined

8    this morning by Special Agents Paul Roberts and Patrick Duffy

9    from the FBI.

10         THE COURT:  Morning, Mr. Schwartz, Mr. Zach, Special

11   Agents Roberts and Duffy.

12         MR. BRODSKY:  Good morning, your Honor.  Reed Brodsky

13   on behalf of Paul Konigsberg, who's here with me, and with us,

14   of course, also is Christine Demana from Gibson Dunn as well.

15         THE COURT:  Morning, Mr. Brodsky, Mr. Konigsberg and

16   Ms. Demana.  Please be seated.  Give me just a moment, please.

17   I understand that Mr. Konigsberg has an application to withdraw

18   his not guilty plea and enter a guilty plea to a three-count

19   superseding information, which is labeled S12 10 CR 228; is

20   that correct, Mr. Brodsky?

21         MR. BRODSKY:  Yes, your Honor.

22         THE COURT:  And the plea is pursuant to the agreement

23   that has been executed and is marked as Government Exhibit 1;

24   is that correct?

25         MR. BRODSKY:  Yes, your Honor.

E6OPKONP

| | |
|---|---|
| 1 | THE COURT:  And the advice of rights form has also |
| 2 | been executed and marked as Court Exhibit 1; is that correct? |
| 3 | MR. BRODSKY:  That's correct, your Honor. |
| 4 | THE COURT:  Thank you.  Mr. Schwartz or Mr. Zach, |
| 5 | would you please make a statement regarding victim notification |
| 6 | in connection with this proceeding? |
| 7 | MR. SCHWARTZ:  Yes, your Honor.  The government filed |
| 8 | electronically on Sunday night a letter indicating that today's |
| 9 | proceeding would be happening.  That was posted also on our |
| 10 | office's Madoff-related website.  In addition, the government |
| 11 | made direct mailings to the thousands of people that have been |
| 12 | identified as victims to our victim witness unit about today's |
| 13 | proceedings. |
| 14 | THE COURT:  Thank you.  And good morning to the |
| 15 | victims, friends and other spectators. |
| 16 | Mr. Konigsberg, before I accept your waiver of |
| 17 | indictment and your guilty plea, there are a number of |
| 18 | questions that I must ask you while you are under oath to |
| 19 | assure that the waiver and plea are valid.  At times, I may |
| 20 | cover a point more than once and I may cover matters that were |
| 21 | also addressed in the advice of rights form that you've seen, |
| 22 | but if I do, that is because it is very important that you |
| 23 | understand what is happening here today. |
| 24 | In that connection, if you don't understand something |
| 25 | that I ask you, please say so, and I will re-word the question |

E6OPKONP

1   or you may speak with your attorney.  Do you understand that?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Please stand now to take the oath.

4           (Defendant sworn)

5           THE DEPUTY CLERK:  State your full name for the

6   record?

7           THE DEFENDANT:  Paul J. Konigsberg.

8           THE DEPUTY CLERK:  Thank you.

9           THE COURT:  Mr. Konigsberg, do you understand that you

10  have solemnly promised to tell the truth and that if you answer

11  any of my questions falsely, your false or untrue answers may

12  later be used against you in another prosecution for perjury or

13  making a false statement?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Thank you.  You may be seated for the next

16  part of the proceeding.  What is your age, sir?

17          THE DEFENDANT:  I'm sorry, my age?

18          THE COURT:  Yes.

19          THE DEFENDANT:  78, your Honor.

20          THE COURT:  Thank you.  Do you need me to speak

21  louder?

22          THE DEFENDANT:  No.  My hearing is pretty good.

23          THE COURT:  Okay.  If you do have any trouble at any

24  time hearing me, just let me know, and I'll try to do better.

25          THE DEFENDANT:  Thank you, your Honor.

E6OPKONP

1          THE COURT:  How far did you go in school?

2          THE DEFENDANT:  I finished my Master of Law degree

3     from NYU.

4          THE COURT:  And have you practiced as an accountant?

5          THE DEFENDANT:  I practiced as an accountant for the

6     last 50 years, stopping somewhere around June 30th of this

7     year.

8          THE COURT:  And did you also practice as a lawyer?

9          THE DEFENDANT:  Only at the very beginning when I got

10    started.  The answer is, for the last 50 years, no.

11         THE COURT:  Mr. Brodsky, would you pull the microphone

12    just a bit closer to Mr. Konigsberg.  Thank you.

13         MR. BRODSKY:  Yes.

14         THE COURT:  Mr. Konigsberg, are you able to read,

15    speak and understand the English language well?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Are you a citizen of the United States?

18         THE DEFENDANT:  I am, your Honor.

19         THE COURT:  Are you now or have you recently been

20    under the care of a physician or a psychiatrist?

21         THE DEFENDANT:  I've had, at various times, seen a

22    psychiatrist, but not often, yes.

23         THE COURT:  Are you suffering from any condition that

24    effects your ability to think clearly?

25         THE DEFENDANT:  No, your Honor.

E6OPKONP

1          THE COURT:  Are you suffering from any condition that

2     effects your ability to understand and process complex

3     information?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Are you taking any medications?

6          THE DEFENDANT:  I take a sleeping pill called Solprin

7     once a night.

8          THE COURT:  Have you ever been treated or hospitalized

9     for any mental illness or for any type of addiction, including

10    drug or alcohol addiction?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  In the past 24 hours, have you taken any

13    drugs, medicine or pills or had any alcohol?

14         THE DEFENDANT:  No alcohol, and the only pill I took

15    was the Solprin last night about 12:00 -- 11:30.

16         THE COURT:  Is your mind clear at this point?

17         THE DEFENDANT:  Absolutely.

18         THE COURT:  Are you feeling well physically today?

19         THE DEFENDANT:  Yes, I am, your Honor.

20         THE COURT:  Are you represented by counsel here today?

21         THE DEFENDANT:  I am, your Honor.

22         THE COURT:  What is your lawyer's name?

23         THE DEFENDANT:  Mr. Reed Brodsky from Gibson, Dunn.

24         THE COURT:  Mr. Brodsky, Messers Schwartz and Zach,

25    does any of you have any doubt as to Mr. Konigsberg's

E6OPKONP

1    competence to enter a guilty plea at this point?

2            MR. BRODSKY:  No, your Honor.

3            MR. SCHWARTZ:  No, your Honor.

4            THE COURT:  Mr. Konigsberg, your attorney has informed

5    me that you want to withdraw your not guilty plea and plead

6    guilty to a superseding information.  Do you want to plead

7    guilty?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Have you fully discussed your case with

10   your attorney, including the charges to which you intend to

11   plead guilty and any defenses that you may have to those

12   charges?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Have you and your attorney discussed the

15   consequences of pleading guilty?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Are you satisfied with your attorney and

18   his representation of you?

19           THE DEFENDANT:  Absolutely.

20           THE COURT:  On the basis of Mr. Konigsberg's responses

21   to my questions and my observation of his demeanor, I find that

22   Mr. Konigsberg is fully competent to waive indictment and enter

23   an informed plea at this time.

24           Before I accept your plea, sir, I'm going to ask you

25   some more questions.  These questions are intended to satisfy

E6OPKONP

the Court that you want to plead guilty because you are, in

fact, guilty and that you equally understand your rights and

the consequences of your plea.  I will now describe certain

rights that you have under the Constitution and laws of the

United States.  You will be giving up these rights if you plead

guilty.  Please listen carefully.  If you do not understand

something that I'm saying or describing, stop me, and I or your

attorney will explain it more fully.

          Under the Constitution and laws of the United States,

you have the right to a speedy and public trial by a jury on

the charges against you that are in the information; do you

understand that?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Do you understand that you have the right

to plead not guilty and to continue to plead not guilty to each

of the charges?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  If there were a trial, you would be

presumed innocent and the government would be required to prove

you guilty by competent evidence and beyond a reasonable doubt.

You would not have to prove that you were innocent at a trial.

Do you understand that?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  If there were a trial, a jury composed of

12 people selected from this district would have to agree

E6OPKONP

1   unanimously in order to find you guilty.  Do you understand

2   that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  If there were a trial, you would have the

5   right to be represented by an attorney at the trial and at all

6   other stages of the proceedings, and if you could not afford

7   one, an attorney would be provided to you free of cost.  Do you

8   understand that?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  If there were a trial, you would have the

11  right to see and hear all of the witnesses against you and your

12  attorney could cross-examine them.  Also, you would have the

13  right to have your attorney object to the government's evidence

14  and offer evidence on your behalf, if you so desired.

15           In addition, you would have the right to have

16  witnesses required to come to court to testify in your defense,

17  and you would have the right to testify yourself, but you would

18  not be required to testify.  Do you understand all that?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Would you like some water?

21           THE DEFENDANT:  No.  I thank you.

22           THE COURT:  All right.  If you need it, just let me

23  know.  I'll give you some.

24           THE DEFENDANT:  Thank you.  I appreciate that.

25           THE COURT:  All right.  Do you understand that if

E6OPKONP

1     there were a trial and you decided not to testify, no adverse

2     inference could be drawn against you based on your decision not

3     to testify?

4                 THE DEFENDANT:  Yes, your Honor.  I understand.

5                 THE COURT:  Do you understand that if you were

6     convicted at a trial, you would have the right to appeal that

7     verdict?

8                 THE DEFENDANT:  Yes.

9                 THE COURT:  Do you understand each and every one of

10    the rights that I've asked you about?

11                THE DEFENDANT:  Yes, your Honor.

12                THE COURT:  Do you have any questions about any of

13    these rights?

14                THE DEFENDANT:  I do not.

15                THE COURT:  Do you understand that by pleading guilty

16    today, you will be giving up each and every one of these

17    rights?

18                THE DEFENDANT:  Yes, your Honor.

19                THE COURT:  Do you also understand that you will be

20    waiving any possible claim that your constitutional rights may

21    have been violated and that you will have no trial?

22                THE DEFENDANT:  Yes, your Honor.

23                THE COURT:  Do you understand that by pleading guilty,

24    you will also have to give up your right not to incriminate

25    yourself because I will ask you questions about what you did in

E6OPKONP

1    order to satisfy myself that you are guilty as charged, and you

2    will have to admit and acknowledge your guilt?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  Do you understand that you can change your

5    mind right now and refuse to plead guilty?  You do not have to

6    enter this plea if you don't want to, for any reason.  Do you

7    understand this fully?

8             THE DEFENDANT:  I do, your Honor.

9             THE COURT:  And do you still want to plead guilty?

10            THE DEFENDANT:  Yes, I do.

11            THE COURT:  The document that contains the charges to

12   which you've indicated you wish to plead guilty is called an

13   information.  It has been issued by the United States Attorney.

14   You have a constitutional right to be charged by an indictment

15   rather than an information.  An indictment would be a charge

16   issued from the grand jury.  Do you understand that?

17            THE DEFENDANT:  Yes.  I do, your Honor.

18            THE COURT:  Mr. Brodsky, would you please show

19   Mr. Konigsberg the waiver of indictment form.

20            MR. BRODSKY:  Yes, your Honor.  I don't believe I have

21   a copy.  I believe the copies are with your deputy.

22            THE COURT:  You should have there the waiver of

23   indictment form, the plea agreement and the advice of rights

24   form signed.

25            MR. BRODSKY:  I do have the plea agreement and the

E6OPKONP

1    advice of rights form.

2                THE COURT:  A copy of the waiver of indictment is on

3    its way.

4                MR. BRODSKY:  Thank you, your Honor.

5                THE COURT:  Okay.  Mr. Konigsberg, have you signed

6    this waiver of indictment form?

7                THE DEFENDANT:  Yes.  I did, your Honor.

8                THE COURT:  Did you read it before you signed it?

9                THE DEFENDANT:  I did.

10               THE COURT:  Did you understand it before you signed

11   it?

12               THE DEFENDANT:  It was explained to me, yes, your

13   Honor.

14               THE COURT:  And do you understand that if you do not

15   waive indictment, if the government wants to prosecute you on

16   the particular charges that are in this information, it would

17   have to present those charges to a grand jury, which might or

18   might not indict you on them?

19               THE DEFENDANT:  Yes, your Honor.  I understand.

20               THE COURT:  Do you understand that you're under no

21   obligation to waive indictment?

22               THE DEFENDANT:  I am, your Honor.

23               THE COURT:  Do you realize that by waiving indictment,

24   you are giving up your right to have these charges presented to

25   a grand jury?

E6OPKONP

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Do you understand what a grand jury is?

3           THE DEFENDANT:  I do.

4           THE COURT:  Has anyone threatened you or promised you

5     anything to get you to waive indictment?

6           THE DEFENDANT:  No, your Honor.

7           THE COURT:  Have you seen a copy of the superseding

8     information that is captioned S12 10 CR 228?

9           THE DEFENDANT:  Yes, I have, your Honor.

10          THE COURT:  Have you read it?

11          THE DEFENDANT:  Thoroughly.

12          THE COURT:  Have you discussed it with your attorney?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  Do you understand the charges against you

15    that are detailed in that information?

16          THE DEFENDANT:  I do, your Honor.

17          THE COURT:  If you want me to, I will read the

18    information out loud to you now here in court.  Do you want me

19    to read it out loud to you?

20          THE DEFENDANT:  It's not necessary.  Thank you, your

21    Honor.

22          THE COURT:  Very well.  I find that Mr. Konigsberg's

23    waiver of indictment is knowing and voluntary.  I accept it and

24    so order it.

25          Mr. Konigsberg, do you understand that Count One of

E6OPKONP

1   this S12 superseding information charges you with participating

2   in a conspiracy to falsify books and records of a

3   broker-dealer, falsify books and records of an investment

4   advisor, and obstruct or impede the lawful governmental

5   functions of the Internal Revenue Service in the ascertainment,

6   assessment, computation, and selection of income taxes in

7   violation of Title 18 of the United States Code Section 371?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  Do you understand that Count Two of this

10  information charges you with falsifying books and records of a

11  broker-dealer in violation of Title 15 of the United States

12  Code Sections 78q(a) and 78ff, Title 17 of Code of Federal

13  Regulations Section 240.17a-3 and Title 18 of the United States

14  Code Section 2?

15         THE DEFENDANT:  Yes, your Honor.  I do.

16         THE COURT:  Do you understand that Count Three of this

17  information charges you with falsifying the books and records

18  of an investment advisor in violation of Title 15 of the United

19  States Code Sections 80b-4 and 80b-17, Title 17, Code of

20  Federal Regulations section 275.204-2 and Title 18 of the

21  United States Code Section 2?

22         THE DEFENDANT:  I do, your Honor.

23         THE COURT:  Do you understand that the government

24  would have to prove each and every part or element of each of

25  these charges beyond a reasonable doubt at a trial if you did

1  not plead guilty?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Mr. Schwartz or Mr. Zach, would you please

4  explain the elements that the government would have to prove if

5  we were to go to trial on this S12 information?

6          MR. SCHWARTZ:  Yes, your Honor.  Count One charges a

7  conspiracy.  To prove the crime of conspiracy, the government

8  must establish each of the following elements beyond a

9  reasonable doubt:

10          First, that the charged conspiracy existed.

11          Second, that the defendant knowingly and willingly

12  became a member of the conspiracy.  That is, that the defendant

13  had the necessary intent.  As your Honor noted, the objects of

14  the conspiracy charged in Count One are to falsify the books

15  and records of the broker-dealer, to falsify the books and

16  records of an investment advisor and to obstruct and impede the

17  due administration of the Internal Revenue office.

18          And, third, the government would have to prove that

19  any one of the co-conspirators, not necessarily the defendant,

20  knowingly committed at least one overt act in the Southern

21  District of New York in furtherance of the conspiracy during

22  the lifetime of the conspiracy.

23          Count Two charges the defendant with falsifying the

24  books and records of a broker-dealer.  To prove that crime, the

25  government would have to prove beyond a reasonable doubt,

E6OPKONP

first, that Madoff Securities was a registered broker-dealer

that was required, under the Securities Exchange Act of 1934,

to make and keep the records charged in Count Two, which

include client account statements, trade confirmations and as

well as certain employment records.

And, second, that the defendant knowingly and

willfully made or caused to be made a materially false or

misleading statement in those records.

And Count Three charges the defendant with falsifying

the books and records of an investment advisor.  To prove that

crime, the government would have to prove beyond a reasonable

doubt, first, that Madoff Securities was a registered or

unregistered investment advisor; second, that Madoff Securities

made use of the mails or any instrumentalities of interstate

commerce in connection with its investment advisory business;

third, that Madoff Securities was required by law to make and

keep the records charged in Count Three, which include again

client account statements, trade confirmations as well as

certain employment records; and, fourth, that the defendant

knowingly and willfully caused Madoff Securities to fail to

make and keep those records required by law.

THE COURT:  Thank you.  Mr. Konigsberg, do you

understand what the government would have to prove if you did

not plead guilty?

THE DEFENDANT:  Yes.  I do, your Honor.

E6OPKONP

1           THE COURT:  Do you understand that the maximum

2    possible penalty for the crime charged in Count One is five

3    years of imprisonment, plus a fine of the greatest of $250,000,

4    twice the gain resulting from the offense or twice the loss to

5    other people resulting from the offense, plus a $100 special

6    assessment, plus three years of supervised release after your

7    term of imprisonment, plus full restitution to all persons

8    injured by your criminal conduct?

9           THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Do you understand that the maximum

11    possible penalty for the crime charged in Count Two is 20 years

12    of imprisonment, plus a fine of the greatest of $5 million,

13    twice the gain resulting from the offense or twice the loss to

14    other people resulting from the offense, plus a $100 special

15    assessment, plus three years of supervised release after your

16    term of imprisonment, plus full restitution to all persons

17    injured by your criminal conduct?

18           THE DEFENDANT:  Yes.  I do, your Honor.

19           THE COURT:  And do you understand that the maximum

20    possible penalty for the crime charged in Count Three is five

21    years of imprisonment, plus a fine of the greatest of $250,000,

22    twice the gain resulting from the offense or twice the loss to

23    other people resulting from the offense, plus a $100 special

24    assessment, plus three years of supervised release after your

25    term of imprisonment, plus full restitution to all persons

E6OPKONP

1    injured by your criminal conduct?

2              THE DEFENDANT:  I do, your Honor.

3              THE COURT:  Do you understand that the maximum

4    possible combined penalty for the three crimes to which you

5    propose to plead guilty is 30 years of imprisonment, plus a

6    fine of $5,500,000 or the greater of the sums of the relevant

7    gains, losses and statutory amounts relating to your offenses,

8    plus full restitution to all persons injured by your criminal

9    conduct, plus a $300 total mandatory special assessment, plus

10   supervised release for three years after your term of

11   imprisonment?

12             THE DEFENDANT:  I do, your Honor.

13             THE COURT:  I will now give you some information and

14   verify your understanding of the supervised release aspect of

15   the potential penalty.  Supervised release means that you will

16   be subject to monitoring when you are released from prison,

17   terms and conditions will be imposed.  If you violate any of

18   the set terms and conditions, you can be sent back to prison

19   without a jury trial.  If you are on supervised release and you

20   do not comply with any of the set terms or conditions, you can

21   be sent to prison for the remainder of the term of supervised

22   release.  You'll be given no credit for the time that you

23   served in prison as a result of your sentence and no credit for

24   any time spent on post-release supervision.

25             So, for example, if you received a prison term and

E6OPKONP

| | |
|---|---|
| 1 | then a two-year term of supervised release, and after you left |
| 2 | prison you lived up to the terms of supervised release for |
| 3 | almost two years, but then you violated some term of the |
| 4 | supervised release, you could be sent back to prison for two |
| 5 | whole years.  Do you understand that? |
| 6 | THE DEFENDANT:  Yes.  I do, your Honor. |
| 7 | THE COURT:  Do you also understand that if I accept |
| 8 | your guilty plea and adjudge you guilty, that adjudication may |
| 9 | deprive you of valuable civil rights such as the right to vote, |
| 10 | the right to hold public office, the right to serve on a jury, |
| 11 | and the right to possess any kind of firearm? |
| 12 | THE DEFENDANT:  I understand, your Honor. |
| 13 | THE COURT:  Under current law, there are sentencing |
| 14 | guidelines that judges must consider in determining your |
| 15 | sentence.  Have you spoken to your attorney about the |
| 16 | sentencing guidelines? |
| 17 | THE DEFENDANT:  Yes.  I have, your Honor. |
| 18 | THE COURT:  Do you understand that in determining your |
| 19 | sentence, the Court must calculate the applicable sentencing |
| 20 | guidelines range and consider that range, possible departures |
| 21 | under the sentencing guidelines and other sentencing factors |
| 22 | under Title 18 of the United States Code Section 3553(a)? |
| 23 | THE DEFENDANT:  I do, your Honor. |
| 24 | THE COURT:  Do you understand that if your attorney or |
| 25 | anyone else has attempted to estimate or predict what your |

E6OPKONP

    1   sentence will be, their estimate or prediction could be wrong?

    2           THE DEFENDANT:  I understand.

    3           THE COURT:  Do you also fully understand that even if

    4   your sentence is different from what your attorney or anyone

    5   else told you it might be, or if it is different from what you

    6   expect, you will still be bound to your guilty plea and you

    7   will not be allowed to withdraw your guilty plea?

    8           THE DEFENDANT:  I understand.

    9           THE COURT:  Do you understand that the sentence to be

   10   imposed will be determined solely by the Court, and that I can

   11   only determine the sentence after the probation department

   12   prepares a presentence report?

   13           THE DEFENDANT:  I understand, your Honor.

   14           THE COURT:  Do you understand that the Court has

   15   discretion, while taking into account the specific provisions

   16   and policy statements of the guidelines, to sentence you to any

   17   period of imprisonment between time served and the 30-year

   18   combined statutory maximum?

   19           THE DEFENDANT:  I do, your Honor.

   20           THE COURT:  Are you currently serving any state or

   21   federal sentence, or are you being prosecuted for any other

   22   crime?

   23           THE DEFENDANT:  Absolutely not.

   24           THE COURT:  Do you understand that the superseding

   25   information also includes a forfeiture allegation in which the

 1  government asserts that you are required to forfeit to the

 2  United States all property, real and personal, involved in the

 3  offense as charged in Counts One and Two of the superseding

 4  information, to wit, a sum of money equal to $4,400,000 and all

 5  property traceable to such property?

 6          THE DEFENDANT:  I do, your Honor.

 7          THE COURT:  Mr. Brodsky, would you please show

 8  Mr. Konigsberg the agreement, which is marked as Government

 9  Exhibit 1.

10          MR. BRODSKY:  Yes, your Honor.  We have it before us.

11          THE COURT:  Thank you.  Mr. Konigsberg, have you

12  signed this agreement?

13          THE DEFENDANT:  Yes.  I have, your Honor.

14          THE COURT:  Did you read it before you signed it?

15          THE DEFENDANT:  I read every page.

16          THE COURT:  Did you discuss it with your attorney

17  before you signed it?

18          THE DEFENDANT:  Yes.  I did, your Honor.

19          THE COURT:  Did you fully understand it before you

20  signed it?

21          THE DEFENDANT:  I did.

22          THE COURT:  Does the agreement reflect accurately your

23  complete and total understanding of the entire agreement

24  between the government, your attorney and you?

25          THE DEFENDANT:  Yes.  It does, your Honor.

E6OPKONP

1          THE COURT:  Is everything that you understand about

2     your plea cooperation and sentence covered in this agreement?

3          THE DEFENDANT:  I believe it is one hundred percent.

4          THE COURT:  Has anything been left out?

5          THE DEFENDANT:  Not that I'm aware of, no.

6          THE COURT:  Has anyone made any promises to you, other

7     than what is set forth in that agreement, or threatened you or

8     forced you or given you anything to get you to plead guilty or

9     enter into the cooperation agreement?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Do you understand that even if the

12     government does not oppose or take a position on what your

13     attorney will ask as a sentence, I am free to impose whatever

14     sentence I believe is appropriate under the circumstances and

15     the applicable law, and you will have no right to withdraw your

16     plea?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Do you understand that a motion by the

19     government would be required to enable me to depart downward

20     from the advisory sentencing guidelines range on the basis of

21     your assistance and that it is up to the government, not up to

22     me, to decide whether your cooperation has been substantial

23     enough for the government to move for such a sentence and that

24     it is up to me to determine the appropriate sentence?

25          THE DEFENDANT:  Yes, your Honor.

E6OPKONP

1          THE COURT:  Do you also understand that I have the

2     power to impose a non-guideline sentence upon consideration of

3     the factors enumerated in Title 18 of the United States Code

4     Section 3553(a)?

5          THE DEFENDANT:  Yes, I do, your Honor.

6          THE COURT:  Do you understand that the agreement

7     provides that you must cooperate fully with the office of the

8     United States Attorney, the Federal Bureau of Investigation,

9     the Internal Revenue Service, and any other law enforcement

10    agency designated by the United States Attorney?

11         THE DEFENDANT:  I do, your Honor.

12         THE COURT:  Do you understand that the agreement does

13    not bind any federal, state or local prosecuting authority

14    other than the United States Attorney?

15         THE DEFENDANT:  Yes, I do.

16         THE COURT:  Do you understand that the agreement

17    provides that if the United States Attorney determines that you

18    have provided substantial assistance in an investigation or

19    prosecution, and if you have fully complied with the

20    understanding specified in the agreement, the United States

21    Attorney will file a motion pursuant to Section 5K1.1 of the

22    sentencing guidelines requesting that the Court sentence you in

23    light of the factors set forth in Section 5K1.1(a)(1) through

24    (5)?

25         THE DEFENDANT:  Yes.  I do, your Honor.

E6OPKONP

1          THE COURT:  Do you understand that the factors that

2     the Court may consider under this section include the

3     significance and usefulness of your assistance, taking into

4     consideration the government's evaluation of the assistance you

5     rendered, the truthfulness, completeness and reliability of any

6     information or testimony provided, the nature and extent of

7     your assistance, any injury suffered or any danger or risk of

8     injury to you or your family as a result of your assistance,

9     and the timeliness of your assistance?

10          THE DEFENDANT:  I do, your Honor.

11          THE COURT:  Do you understand that even if the United

12     States Attorney files such a motion, the sentence to be imposed

13     on you remains within the sole discretion of the Court?

14          THE DEFENDANT:  I do, your Honor.

15          THE COURT:  Do you understand that you will not be

16     entitled to withdraw your guilty plea, even if the Court denies

17     the motion?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Do you understand that if the United

20     States Attorney determines that you have not provided

21     substantial assistance in an investigation or prosecution, or

22     that you have violated any provision of the agreement, the

23     United States Attorney is not obligated to file a motion under

24     Section 5K1.1?

25          THE DEFENDANT:  I do, your Honor.

E6OPKONP

1          THE COURT:  And do you understand that you will not be

2     entitled to withdraw your guilty plea even if the United States

3     Attorney does not file the motion?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you understand that your agreement

6     provides that if you commit any further crimes or if it is

7     determined that you gave false, incomplete or misleading

8     testimony or information, or otherwise violated any provision

9     of the agreement, you shall be subject to prosecution for any

10    federal violations of which the United States Attorney has

11    knowledge, including perjury and obstruction of justice?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Do you understand that your agreement

14    provides that if you commit any further crimes, or if it is

15    determined that you gave false, incomplete or misleading

16    testimony or information or otherwise violated any provision of

17    the cooperation agreement, all statements that you have made to

18    the United States Attorney or other designated law enforcement

19    agents and any testimony you have given before a grand jury or

20    other tribunal may be admissible in evidence in any criminal

21    proceedings against you?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Do you understand that your agreement also

24    provides that you may not assert a claim that such statements

25    should be suppressed from evidence, and that you have waived

```
1    your right to claim that such statements should be suppressed

2    from evidence?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Counsel, in light of Mr. Konigsberg's

5    affirmation that he is an American citizen, is there any need

6    to allocute him on the immigration waiver provisions of the

7    agreement?

8           MR. BRODSKY:  No, your Honor.

9           MR. SCHWARTZ:  My appeals unit probably won't be

10   happy, but no, your Honor.

11          THE COURT:  Thank you.  Mr. Konigsberg, do you

12   understand that on Page 2, this agreement also includes your

13   agreement to forfeit to the United States a sum of money equal

14   to $4,400,000 in United States currency, representing the

15   aggregate value of all property, real and personal, that

16   constitutes or is derived from proceeds traceable to the

17   commission of the offenses constituting specified unlawful

18   activity as defined in Title 18, Section 1956(c)(7), as alleged

19   in Counts One and Two of the information?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand that any amount that you

22   do forfeit will not be credited towards any fines, restitution,

23   cost of imprisonment or other additional penalty that the Court

24   may impose on you?

25          THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  Do you still want to plead guilty pursuant

2     to this agreement?

3          THE DEFENDANT:  I do, your Honor.

4          THE COURT:  Mr. Brodsky, do you know of any valid

5     reason why Mr. Konigsberg would prevail at trial?

6          MR. BRODSKY:  No, your Honor.

7          THE COURT:  Do you know of any reason why he should

8     not be permitted to plead guilty?

9          MR. BRODSKY:  No, your Honor.

10          THE COURT:  Mr. Konigsberg, would you and your

11     attorney please stand now and would you please tell me what you

12     did that makes you guilty of the crimes charged in the S12

13     superseding information?

14          MR. BRODSKY:  Your Honor, Mr. Konigsberg has a written

15     statement, which he's reviewed and drafted, and I would ask

16     your Honor's permission to allow him to read the statement.

17          THE COURT:  Yes, you may.

18          THE DEFENDANT:  Thank you, your Honor.  I'm here today

19     to take responsibility for what I did that was wrong.  At

20     certain times I agreed with people at Madoff's firm, which was

21     a broker-dealer and an investment advisor, and certain of his

22     clients to return trading statements to them and then accept

23     amended ones from them, which included new and changed

24     securities transactions and that I used these amended

25     statements to file tax returns.

Even though I didn't know these new securities transactions never actually took place in the market, returning the original statements and using amended ones with new trades to file tax returns was wrong, and I knew it at the time.

In 2003, client 2 and I were present in Manhattan at Madoff's firm when, in my presence, Annette Bongiorno changed client 2's trading statements for the tax year 2002 so that they showed a gain instead of a loss.  I later agreed to use those changed statements to file tax returns for client 2, which I signed in Manhattan before submission to the IRS in 2003.

I knew Bongiorno's change of client 2's trading statements were wrong and my filing of the tax return based on them was wrong.

In 2008, Madoff's firm asked me to return the trading statements of client 3 so that they could change them, and I agreed and did return them.  Tax returns based on client 3's changed statements, however, were never filed following Madoff's arrest in December of 2008.  I knew that returning clients 3's trading statements to be changed by Madoff's firm was wrong.

Your Honor, I would like to just note two other things.  First, in or about 1995, I provided accurate and proper tax advice to Madoff, advising him that transfers of money through CC1 and CC2 could be done as a gift, which would

1    be taxable to Madoff, or as a loan that would not be taxable so

2    long as CC1 and CC2 paid the required interest on those loans

3    and paid back the principal on those loans.  I then referred

4    Madoff to a lawyer to prepare the loans.

5           On December 10th, 2008, the day before Madoff was

6    arrested, Madoff called me out of the blue and asked whether

7    these loans had been converted into gifts.

8           I responded that he never discussed the possibility of

9    reclassifying the loans into gifts with me and that he should

10   speak with his accountant, as I was not his accountant and,

11   therefore, did not make those kind of decisions.

12          Finally, it is important for me to let you know, your

13   Honor, that I was not aware of Madoff's horrific and evil Ponzi

14   schemes, which has brought great suffering to so many, and many

15   of my family members and close friends have suffered from what

16   he did and he did to others.  Thank you.

17          THE COURT:  Thank you.  Mr. Konigsberg, did you, in

18   fact, participate in the preparation of that statement?

19          THE DEFENDANT:  I did, your Honor.

20          THE COURT:  Is everything that you have read from that

21   statement true?

22          THE DEFENDANT:  Yes.  It is, your Honor.

23          THE COURT:  Mr. Schwartz, is there anything further

24   that the government would request be addressed in the actual

25   allocution?

1          MR. SCHWARTZ:  No, your Honor.  I believe that

2     suffices.

3          THE COURT:  Mr. Konigsberg, you may be seated.

4          Mr. Schwartz, would you please summarize the

5     government's evidence against Mr. Konigsberg?

6          MR. SCHWARTZ:  Of course, your Honor.  Your Honor, had

7     this case proceeded to trial, the government would have proven

8     through testimony and documentary evidence and other evidence,

9     beyond a reasonable doubt, the facts set forth in the

10     superseding information captioned S12 10 CR 228.

11          Specifically, the government would have proven that

12     Paul Konigsberg, the defendant, is a lawyer and a certified

13     public accountant, who was the senior tax partner of

14     Konigsberg, Wolf and Company PC, and a minority shareholder of

15     Madoff Securities International Limited, making him the only

16     person outside of the Madoff family to hold an ownership

17     interest in any of the Madoff entities.

18          Beginning in at least the early 1990s, Madoff began to

19     steer several of his investors towards Konigsberg's accounting

20     practice, particularly certain long-time investors in whose

21     accounts Madoff executed the most glaringly fraudulent

22     transactions.  By December 2008, when the fraud collapsed,

23     Konigsberg, Wolf was providing accounting services for Madoff

24     Securities' clients who aggregately held over 300 investment

25     advisory accounts.

1          After the death of one long-time Madoff client, who

2     had recruited investors and so had been promised by Madoff

3     corresponding annual commission payments in the form of

4     guaranteed returns and fictitious backdated trades, Madoff

5     encouraged the client's widow to use Konigsberg as his

6     accountant.  Konigsberg received statements for the widow's

7     account, and each December, over the course of several years,

8     Konigsberg called Frank DiPascali to ensure that the widow's

9     accounts reflected the promised returns.

10          Madoff and Frank DiPascali then devised an investment

11     strategy for the widow's account in which her money would be

12     invested in treasury bonds and cash equivalents for the first

13     eleven months of each year and in January, DiPascali would

14     fabricate backdated options trades in order to generate the

15     promised returns in December of the prior month.

16          In addition, from time to time, Madoff and certain of

17     his employees amended the holdings of some of his oldest

18     clients, replacing statements reflecting one set of securities

19     with revised statements for the exact same time period,

20     reflecting entirely different holdings and values.

21          Because of the existence of multiple vastly different

22     account statements for the same time, because that risked

23     exposing the fraud, Madoff could only ask certain trusted

24     clients and Paul Konigsberg to return their statements in favor

25     of the amended ones.  Although he did not intend to assist

E6OPKONP

Madoff in defrauding his customers through the Ponzi scheme,
because Konigsberg serviced certain of Madoff's most important
accounts, he did frequently return client account statements in
favor of the false amended ones.

          For example, Konigsberg was physically present when
Annette Bongiorno and a client revised an entire year's worth
of transaction activity.  When the backdating was complete,
Konigsberg returned the original account statements to
Bongiorno and then used the new extra-false books and records
to file the client's tax returns.

          Konigsberg similarly returned statements for another
client in 2008, after Madoff and his co-conspirators had redone
a year's worth of statements.

          In addition to being paid for his accounting services
directly by his clients, Konigsberg also received payments from
Madoff Securities of approximately 15,000 to $25,000 per month
for over a decade.

          In addition, beginning in approximately 1992,
Konigsberg arranged for a relative to be put on Madoff
Securities' payroll, receiving salary and employee benefits
despite not working at the firm.  Konigsberg arranged for the
relative to be paid by Madoff in lieu of accepting payments
himself, despite the fact that the payments were on account of
customers that Konigsberg recruited to invest with Madoff.

          Finally, Konigsberg also provided tax and business

advice to Madoff personally, although he was not Madoff's

accountant.  For example, in approximately 2002, Konigsberg,

Madoff, Peter Madoff and two Madoff Securities' employees

identified in the information as CC1 and CC2 partnered in a

real estate venture.  Konigsberg participated in a

tax-reduction strategy in which the real estate was donated to

charity in order to generate a large charitable deduction.  CC1

and CC2 then took advantage of millions of dollars in

back-dated securities trading at Madoff Securities in order to

be able to benefit from the entire deduction.

        Konigsberg also advised Madoff about the tax

implications of transferring large sums of money directly to

CC1 and CC2.  Although Konigsberg provided accurate tax advice

to Madoff, Madoff, CC1 and CC2 used that advice to structure

what appeared to be tax-free loans, but which loans in fact

were never intended to be repaid.

        On December 10th, 2008, the day before Madoff was

arrested, Madoff called Konigsberg to ask whether the loans had

been converted into gifts, which would have created a

substantial tax liability for Madoff.  In fact, Madoff and

Konigsberg had never discussed the possibility of reclassifying

the loans into gifts and Konigsberg told Madoff so.

        THE COURT:  Is it the government's representation that

the government can prove those factual representations through

competent witnesses and admissible evidence?

E6OPKONP

1              MR. SCHWARTZ:  It is, your Honor.

2              THE COURT:  Thank you.  Mr. Konigsberg, would you

3     please stand again.  How do you now plead to the charge in

4     Count One of the information, not guilty or guilty?

5              THE DEFENDANT:  Guilty, your Honor.

6              THE COURT:  How do you now plead to the charge in

7     Count Two of the information, not guilty or guilty?

8              THE DEFENDANT:  Guilty, your Honor.

9              THE COURT:  How do you now plead to the charge in

10    Count Three of the information, not guilty or guilty?

11             THE DEFENDANT:  Guilty, your Honor.

12             THE COURT:  Are you pleading guilty to each of these

13    charges because you are, in fact, guilty of the crimes charged?

14             THE DEFENDANT:  Yes, I am, your Honor.

15             THE COURT:  Are you pleading guilty voluntarily and of

16    your own freewill?

17             THE DEFENDANT:  I am, your Honor.

18             THE COURT:  Mr. Brodsky, would you please show

19    Mr. Konigsberg Court Exhibit 1, the advice of rights form.

20             Mr. Konigsberg, have you signed this form?

21             THE DEFENDANT:  Yes, I have, your Honor.

22             THE COURT:  Did you read it before you signed it?

23             THE DEFENDANT:  Yes.  It was read to me, and I looked

24    it over.

25             THE COURT:  Did you discuss it with your attorney

E6OPKONP

```
 1   before you signed it?

 2                THE DEFENDANT:  Yes.  I did, your Honor.

 3                THE COURT:  And did you understand it before you

 4   signed it?

 5                THE DEFENDANT:  I did.

 6                THE COURT:  Mr. Brodsky, did you also review and sign

 7   Court Exhibit 1?

 8                MR. BRODSKY:  I did, your Honor.

 9                THE COURT:  Mr. Brodsky, are there any other questions

10   that you believe I should ask Mr. Konigsberg in connection with

11   this plea?

12                MR. BRODSKY:  No, your Honor.

13                THE COURT:  Mr. Schwartz, are there any other

14   questions that you believe I should ask in connection with the

15   plea?

16                MR. SCHWARTZ:  No, your Honor.  Thank you.

17                THE COURT:  Thank you.  Mr. Konigsberg, you have

18   acknowledged that you are guilty as charged in the S12

19   information.  I find that you know your rights and that you are

20   waiving them voluntarily.  Because your plea is entered

21   knowingly and voluntarily and is supported by independent basis

22   in fact, containing each of the essential elements of each

23   offense, I accept your guilty plea and I adjudge you guilty of

24   the offenses charged in Counts One, Two and Three of

25   superseding information S12 10 CR 228.  Thank you.  You may be
```

E6OPKONP

1    seated.

2                    THE DEFENDANT:  Thank you, your Honor.

3                    THE COURT:  Mr. Brodsky, do you wish to be present for

4    any interview of Mr. Konigsberg in connection with the

5    preparation of the presentence report?

6                    MR. BRODSKY:  Yes, your Honor.

7                    THE COURT:  I will make that direction.

8                    Counsel, what is your desire with respect to setting a

9    sentencing or control date?

10                   MR. SCHWARTZ:  Your Honor, I'd suggest we set a

11   control date six months out.

12                   THE COURT:  Give me just one moment, please.

13                   MR. SCHWARTZ:  Or if it is administratively easier, I

14   think now all of the other cooperators in this case are on the

15   same day.  You may just want to put this one on the same day.

16                   THE COURT:  All right.  I'd have to find that day.

17   Let me see if I can do that.

18                   MR. SCHWARTZ:  It's in September.

19                   THE COURT:  Yes, it is September 19th.  So we will set

20   a control date of September 19th at 2:00 in the afternoon.

21                   Counsel, when it ultimately comes time for the

22   preparation of the presentence report in advance of an actual

23   sentencing date, make your submissions in accordance with my

24   sentencing submission procedures, which are posted on the

25   court's website.

E6OPKONP

1          And, Mr. Konigsberg, at some point, the probation

2    office will be preparing a presentence report to assist me in

3    sentencing you.  You will be interviewed by the probation

4    office.  It is important that the information that you give to

5    the probation officer be truthful and accurate.  The report is

6    important in my decision as to what your sentence will be.

7          You and your attorney have a right and will have an

8    opportunity to examine the report, to challenge or comment on

9    it and to speak on your behalf before sentencing.  Failing to

10   be truthful with the probation office and the Court may have an

11   adverse effect on your sentence and may subject you to

12   prosecution.  Do you understand that?

13          THE DEFENDANT:  I do, your Honor.

14          THE COURT:  Are there any applications with respect to

15   alteration of release conditions pending sentence?

16          MR. SCHWARTZ:  No, your Honor.

17          MR. BRODSKY:  No, your Honor.

18          THE COURT:  The current release conditions are

19   continued pending sentencing.

20          Mr. Konigsberg, do you understand that if you fail to

21   return to my courtroom for sentencing on the day and time

22   ultimately set for your actual sentencing, you will be guilty

23   of a criminal act for which you could be sentenced to

24   imprisonment separate or apart from and in addition to any

25   other sentence that you might receive for the crimes to which

E6OPKONP

1    you have just pled guilty?

2              THE DEFENDANT:  I will be here, your Honor.

3              THE COURT:  Do you also understand that all of the

4    conditions on which you have been released up until now

5    continue to apply and that the consequences of violating any of

6    those conditions can be severe?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Thank you.  Counsel, is there anything

9    else that we need to address together this morning?

10             MR. BRODSKY:  Your Honor, if I may, I'd like to draw

11   your attention to the many family members, colleagues, and

12   friends of Mr. Konigsberg, who are here to support him in his

13   time of need.  He's been there in the past to support them in

14   their time of need and they love him very much, and I wanted to

15   draw that to your attention.

16             THE COURT:  Thank you.  Good morning to all of you,

17   and thank you for coming to court today.  And with that, we are

18   adjourned.  Keep well, everyone.

19             MR. SCHWARTZ:  Thank you.

20             MR. BRODSKY:  Thank you, your Honor.

21             (Adjourned)

22

23

24

25